Martin, J.
delivered the opinion of the court. The plaintiff seeks to recover nine hundred dollars, which she alleges the defendant extorted from her, for his services, as parish judge, in the settlement of the estate of her deceased husband.
The defendant pleaded the general issue, and that for his services as parishjudge, relating to the estate of the deceased, he charged and received his legal fees only; and that the excess was voluntarily paid as a compensation for other services, rendered by him as agent, and attorney in fact of the plaintiff, out of his parish, viz. in the city of New-Orleans. That, at the time she made him an allowance for these services, he told her they were judicial acts,’ and whatever she gave therefor was not required, but received as a voluntary compensation.
Bachemin deposed, that on the day of the inventory, he was on the gallery, near a window, thro’ which he saw the plaintiff and defendant, in an adjacent room, and heard the former tell the latter, she wished him to do all *723 her business, not only as judge in the pari'sh, but as her agent in New-Orleans, and she would give him $900. The defendant replied, that was much more than he would be entitled to, as judge; that his legal fees would not probably amount to more than $300, and he asked no more. She answered, she would give him $600 more, provided he would attend to all her business, as she would not meddle with them any longer.
Sometime after the sale, the witness told the plaintiff she had given too much to the defendant; she observed she thought not, as he was a friend of the family, had rendered many services, for which he had not received any thing, and might render more.
On his cross-examination, the witness declared he was married to the defendant half sister. He did not know, nor heard of any other gift made to the defendant by any inhabitant of the parish, for similar services. He cannot tell whether the plaintiff can read or write; she appeared very much afraid of lawyers: there is none dwelling in the parish. C. Camel was present at the inventory, but in another room, at the time of the conversation related.
*724 Saucier said that three days after the sale of the estate, dining with the plaintiff at the defendant’s, she told the latter she had given |j¡m ggoo to settle all her affairs, and that every body was not so generous. He answered, that if she had any regret there was nothing done, and her affairs would be equally attended to, for what the law allows. She replied, she regreted nothing ; he had informed her his fees would amount to $300 only ; but, as he was to attend to all her affairs, in and out of the parish, and New-Orleans, she gave him $000; she knew he was a friend of the deceased.
The witness knew the defendant attended to the plaintiff’s business in the city, and went thither several times, even when in a state of convalescence. In January, 1821, the witness carried a letter from him to her, which was read to the latter, by her daughter, and had been read to him by the former. She told him to say to the defendant, that there were evil talkers, and it was not true she had complained of him. She observed, that if the weather had been good, she would have gone to the defendant’s to tell him this. She appeared anxious to explain the matter to the witness.
*725 He knows, that after the sale, and before . this conversation, she paid frequent and friendly visits at the defendant’s, and slept there several times, with other persons of her family.
On his cross-examination, he added, the plaintiff never, in his presence, complained of the defendant; but he heard she said ill things of him about a month ago. He did not know that she had made a declaration against the defendant, which had been handed to the attorney-general, at the time he delivered her his letter. He does not know how the defendant learnt that she had complained of him. In reading his letter for the plaintiff he observed to the witness, that he heard she complained of him, and had written to her about it.
Camel deposed, he was one of the appraisers of the property of the estate. At the close of the inventory, the plaintiff asked the défendant, how much he would charge for finishing all the affairs of the estate; he begged her not to make herself uneasy about it; he had been a friend of her husband’s and the family, and his charge would be $900. She answered, he did not appear to treat her fa-vourably, and he asked more than he was en *726 titled to. He observed, that if she took a lawyer, she would have to pay his fee as wejj ag jjjg own. gjjg repüe(j? that if she must pay this sum, she would do it. Bachemin was then on the gallery, on which the windows of the parlour open, near the place in which the plaintiff and defendant sat. Chesnu was in the parlour.
Chesnu deposed, he was present at the inventory, at the close of which, the plaintiff asked the defendant, what would be his charge for finishing all the affairs. He answered she well knew he had been a friend of her husband and the family, and she need not be uneasy about this. She insisted on being informed of the amount of his charges, and he said $900. On her observing he asked more than he was entitled to, he replied that she would fare worse, if she took a lawyer, as she would have two sets of fees to pay; she added that if she must pay that sum she would give it.
The witness w'as in the parlour, Camel was near the door; Bachemin on the gallery, near a brother of the deceased: another brother, and Latour were also there.
Masson deposed, the plaintiff came to him *727 in New-Orleans, to receive five dollars, lent him by her husband. He asked her who had charge of the affairs of the estate, she named the defendant: adding she had given him $900; he had told her his fees would not amount to more than three hundred dollars; but the additional $600 were for settling her affairs in the city, and out of the parish, as she wished not to be troubled with them, nor to have any thing to do with lawyers. She had preferred the defendant, as he had been a friend of her husband’s.
The following is a translation of the defendant’s receipt, annexed to the petition. “ Received of Mrs. Widow Duverney, according to our conditions, for my costs, pains and cares, relative to the estate of her husband, nine hundred dollars, viz. $154 50 cents, which have been paid and adjudged, the 22d of July, 1820, at the sale made in this parish, and $745 50 cents, which she has paid me. Parish of Plaquemines, August 20th, 1820, M. Vinot, Judge.”
The plaintiff* obtained a verdict for $800, and judgment was accordingly given; the judge declaring himself satisfied with the verdict: but before the judgment was signed, *728 the parties agreed that the verdict be set aside, the defendant withdrawing his call for a jury, and the cause was submitted to the court.
The district judge was of opinion, that as regards the charge of $300 for fees of office, there was a gross misrepresentation on the part of the defendant; for, it is impossible he could have been ignorant of the precise amount of his lawful fees. He, therefore, gave judgment against the defendant for $175 80 cents, the difference between the amount of fees according to law, $124 80 cents, and the sum of $300, represented to the plaintiff^ by the defendant, as the probable extent of his claim as judge, with interest from the judicial demand.
He did not see any thing illegal or improper in the rest of the transaction.
The defendant appealed, and the plaintiff complains of the judgment, as withholding relief from her.
We think the decision of the district court correct, on the first part of the case, viz. the charge for fees.
It seems to us it was not equally correct, as to the charge of $600. It appears from *729 the testimony, that the' plaintiff feas induced • to give that sum to avoid the payment of lawyers* fees ; the services which such fees compensate, cannot legally be rendered by the judge. We have no evidence of the nature of the services rendered by the defend ant, out of his parish. He is not known on record as an attorney at law. If he attended as an attorney, under a special power, in any suit, out of his parish, he might have shewn it. The plaintiff being left as a widow, to settle the estate of her husband, if she needed professional aid, is to be presumed to need it in her parish, or about the concerns of the estate.
Now, it is clear that a parish judge, charged with the settlement of an estate, cannot give professional aid therein.
Hence, the plaintiff, who, from the testimony, appears to have been induced to make an allowance, compensating professional services, either paid for such as were not rendered at all, or could not be properly rendered by the person who was thus rewarded.
We think that the sum of $124 80 cents, the legal amount of the office fees, is the *730 only part of the sum received, which the de-4/1 . . fendant appears to be fairly entitled to retain.
Hennen for plaintiff, Davezac for defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled and reversed, and that the plaintiff recover from the defendant, the sum of seven hundred and seventy five dollars and twenty cents, with interest from the judicial demand; saving and reserving to him, his right against the present plaintiff, for compensation, if any be due for services, not inconsistent with his office: and it is further ordered, that the defendant pay costs in both courts.